A95A2031. STRATTON & COMPANY, INC. v. ARGONAUT INSURANCE COMPANY.

(469 SE2d 545)

POPE, Presiding Judge.

Plaintiff Stratton & Company, Inc. appeals the trial court's grant of partial summary judgment to defendant Argonaut Insurance Company. Concluding that the trial court erred, we reverse.

Construed most favorably to Stratton, the record shows that in November 1984, it entered into a contract with GAF Office Building Ltd. to construct an office building and parking deck. Stratton subcontracted out most of the work, and construction on the project began. The construction continued until May 1986, when the work ceased due to disputes between Stratton and GAF, and due to GAF's bankruptcy. Thereafter, Goldome Credit Realty Corporation acquired title to the property through a foreclosure proceeding. Stratton and Goldome entered into a completion contract, under which Stratton agreed to finish construction of the building and parking deck.

After the project was completed, but before the punch list items were taken care of, Goldome made a number of complaints concerning Stratton's work. On April 26, 1989, Goldome and its assignee in interest filed suit against Stratton. Stratton forwarded a copy of the suit to its insurer, Argonaut, who denied coverage and refused to defend Stratton. On September 29, 1989, Stratton settled the lawsuit by paying Goldome $468,464. Thereafter, on February 12, 1993, Stratton filed suit against Argonaut for reimbursement, damages and the costs incurred in defending the Goldome lawsuit.

After answering Stratton's complaint denying liability, Argonaut moved for partial summary judgment as to that portion of the complaint which sought reimbursement for the monies Stratton spent in settling the Goldome suit. The trial court initially denied the motion, but upon reconsideration, granted partial summary judgment to Ar-

gonaut based on an exclusion in Stratton's policy with Argonaut.

1. Stratton purchased the comprehensive general liability insurance policy at issue in this case from Argonaut for $900,000: $250,000 of that amount went toward a broad form property damage endorsement. The policy states in pertinent part that "[Argonaut] will pay on behalf of the *insured* all sums which the *insured* shall become legally obligated to pay as damages because of . . . *property damage* to which this insurance applies, caused by an *occurrence*, and [Argonaut] shall have the right and duty to defend any suit against the *insured* seeking damages on account of such . . . *property damage*, even if any of the allegations of the suit are groundless, false, or fraudulent. . . ." Exclusion (n), however, states that the insurance does not apply "to *property damage* to the *named insured's products* arising out of such products or any part of such products." The policy defines "named insured's products" as "goods or products manufactured, sold, handled or distributed by the *named insured* or by others trading under his name. . . ."

In granting Argonaut's partial summary judgment motion, the trial court concluded that the GAF Building and its parking deck were Stratton's "product," and thus, that Exclusion (n) was applicable and precluded coverage under the policy. Stratton contends that the trial court erred in reaching this conclusion. We agree.

As the trial court noted, there is no Georgia case law specifically addressing the issue of whether a building should be considered the "product" of its builder, or in this case, of the general contractor responsible for the building's construction.[1] Therefore, we turn to case law from other jurisdictions for guidance. In doing so, we find that there is a split among those jurisdictions that have addressed the issue. Some jurisdictions have held that real property, such as the building in this case, is not a "product" within the meaning of the standard form comprehensive general liability policy. See *Green Constr. Co. v. Nat. Union Fire Ins. Co.*, 771 FSupp. 1000, 1004-1005 (W. D. Mo. 1991); *Maryland Cas. Co. v. Reeder*, 270 Cal. Rptr. 719, 727-728 (Cal. App. 4 Dist. 1990); *Mid-United Contractors v. Providence Lloyds Ins. Co.*, 754 SW2d 824, 826-827 (Tex. App. 1988); *Fireguard Sprinkler Systems v. Scottsdale Ins. Co.*, 864 F2d 648, 654-655 (9th Cir. 1988) (applying Oregon law). This interpretation is consistent with that of the insurance industry. *Reeder*, 270 Cal. Rptr. at 728. Other jurisdictions have held that the definition of "product"

---

[1] Contrary to Argonaut's assertion, in *Gary L. Shaw Bldrs. v. State Auto. Mut. Ins. Co.*, 182 Ga. App. 220 (355 SE2d 130) (1987), we did not specifically address the issue of whether a building was a "product" within the meaning of the standard form comprehensive general liability policy because both parties in that case agreed that the house at issue was a "product."

does include a building contractor's work product. See *Westman Indus. Co. v. Hartford Ins. Group*, 751 P2d 1242, 1245-1247 (Wash. App. 1988); *Century I Joint Venture v. United States Fid. &c. Co.*, 493 A2d 370, 373-376 (Md. App. 1985). Upon review, we conclude that the better reasoned cases come from those jurisdictions that have adopted the insurance industry's own interpretation, and found that real property, like the building and parking deck here, are not "products" and thus are not excluded from coverage by Exclusion (n) of the standard form comprehensive general liability policy.

As recognized by the Texas Court of Appeals, "in common parlance, a building is not said to have been 'manufactured' but rather it is 'built,' 'constructed' or 'erected.' " (Citations and punctuation omitted.) *Mid-United Contractors*, 754 SW2d at 826. Furthermore, in the Goldome lawsuit, Goldome sought recovery for damages resulting to the building and parking deck from defective and incomplete site preparation and construction work performed by Stratton. Construction work and site preparation are not "products" under the policy's definition. "Site preparation [and construction are] not . . . object[s] that can be conveyed from the insured to others, as the definition of [named insured's products] implies. . . . Instead, [they constitute] the performance of a service." (Citations omitted.) *Fireguard*, 864 F2d at 654.

Accordingly, we hold that recovery for property damage to the building and parking deck associated with defective and incomplete site preparation and construction is not barred from coverage by Exclusion (n). To hold otherwise, would be to disregard the distinction between "products" and "work performed," both of which are the subject of separate policy exclusions. See *Reeder*, 270 Cal. Rptr. at 728. Moreover, in cases such as this, "where the language contained in an insurance policy is susceptible to two or more [reasonable] constructions, the one most favorable to the insured will be adopted." *Alley v. Great Am. Ins. Co.*, 160 Ga. App. 597, 600 (287 SE2d 613) (1981); see *Richards v. Hanover Ins. Co.*, 250 Ga. 613, 615 (299 SE2d 561) (1983); OCGA § 13-2-2 (5).

2. We reject Argonaut's contention that coverage is barred under the policy based on the "work performed" or "completed operations hazard" exclusion found in section VI (A) (3) of the broad form property damage endorsement. This endorsement does not contain a separate term granting coverage, but instead works by modifying the exclusions found in the basic policy. Specifically, the endorsement modifies and replaces Exclusion (o), which states that "[t]he insurance does not apply . . . to *property damage* to work performed by or on behalf of the *named insured* arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith. . . ." Section VI (A) (3) of the endorsement states

that the insurance does not apply, "with respect to the completed operations hazard and with respect to any classification stated in the policy or in the company's manual as 'including completed operations', to property damage to work performed by the named insured arising out of such work or any portion thereof, or out of such materials, parts or equipment furnished in connection therewith."

Based on the above section of the broad form endorsement, Stratton argues that the policy provides coverage for property damage to the building and parking deck resulting from the work performed and materials supplied by subcontractors on the project. We agree. The language adopted in the broad form endorsement specifically deleted the phrase "or on behalf of" which was found in Exclusion (o). By doing so, we conclude, as have a number of other jurisdictions, that the endorsement narrows the exclusions found in the basic policy so as not to preclude coverage regarding faulty work or materials performed or supplied by subcontractors. See *McKellar Dev. of Nevada v. Northern Ins. Co. &c.*, 837 P2d 858, 860 (Nev. 1992); *Green Constr. Co.*, 771 FSupp. at 1006-1007; *Reeder*, 270 Cal. Rptr. at 726; *W. E. O'Neil Constr. Co. v. Nat. Union Fire Ins. Co. &c.*, 721 FSupp. 984, 996 (N. D. Ill. 1989); *Fireguard*, 864 F2d at 649-654. While some jurisdictions have disagreed with this construction of the broad form endorsement, see *Blaylock & Brown Constr. v. AIU Ins. Co.*, 796 SW2d 146, 154 (Tenn. App. 1990); *Knutson Constr. Co. v. St. Paul Fire &c. Ins. Co.*, 396 NW2d 229, 236-237 (Minn. 1986), this construction is supported by the insurance industry's own interpretation of the endorsement. See *Reeder*, 270 Cal. Rptr. at 725-726. It also is mandated by the principles of contract construction in this State. See *Richards*, 250 Ga. at 615; *Alley*, 160 Ga. App. at 600.

*Judgment reversed. Ruffin, J., concurs. Beasley, C. J., concurs in judgment only.*

DECIDED MARCH 14, 1996.

*Gambrell & Stolz, Leo J. Fogarty, Bryan M. Cavan*, for appellant.

*Fellows, Johnson, Davis & LaBriola, G. Terrell Davis*, for appellee.