## 73863. ST. PAUL FIRE & MARINE INSURANCE COMPANY v. SNITZER et al.
### (358 SE2d 925)

BEASLEY, Judge.

Joseph and Dorothy Snitzer's house and property were insured by St. Paul under a homeowner policy described as an "all-in-1." On

April 5, 1985, the Snitzers' property was heavily damaged by a severe wind storm. Damages totalling over $67,000 included about $33,000 in debris removal.

St. Paul did not contest the damages to the real and personal property but contended that the debris removal was limited to a maximum of $1,000 by a policy endorsement. The Snitzers rejected St. Paul's tender of less than the full amount and brought suit on the contract, seeking recovery of $34,053.25 for damages to their real and personal property, $33,677.50 for debris removal, and penalty and attorney fees under OCGA § 33-4-6 for bad faith.

After both sides moved for summary judgment, the court granted the Snitzers' motion as to coverage and denied St. Paul's motion, leaving the question as to bad faith for jury determination.

The policy as originally issued contained two separate provisions on different pages. One stated: "We cover your trees, shrubs, plants or lawns but the most we will pay for all of them is $5,000." The other provided: "We'll also pay for debris removal, reasonable repairs to protect covered property from further damage, and any fire department service charges." The policy apparently was amended, retaining the same language but moving the two provisions to other pages. On November 29, 1981 an endorsement was issued which amended "coverage for trees, shrubs, plants or lawns on page 5 of your policy." It stated: "We cover your trees, shrubs, plants, or lawns. The most we will pay for any one of them is $250 including clean-up expense. The most we will pay for all trees, shrubs, plants, or lawns in any one loss if $1,000 including clean-up expense."

The endorsement must have had reference to the earlier policy since in it the "trees" provision was on page 5; in the later policy it was on page 10. St. Paul submitted another even later version of the policy in which the endorsement language was incorporated in the body of the policy. The Snitzers denied ever receiving that policy.

This court when considering an all-risk policy which provided for debris removal defined debris as "waste material resulting from the destruction of some article." *Lexington Ins. Co. v. Ryder System*, 142 Ga. App. 36, 37 (2) (234 SE2d 839) (1977). Webster's defines it as: "scattered fragments; remains; rubbish, especially that caused by destruction." (Webster's New Twentieth Century Dictionary, 2nd ed. (1964)). Here the debris consisted of "trees, soil and shrubs from adjacent properties."

St. Paul urges that because of the composition of the alleged debris it should be considered within the terms of the endorsement limiting recovery to $1,000 total for trees, etc., including clean-up expense. The debris removal portion of the policy has no limit, so the Snitzers contend that it controls. The question is whether the removal of the trees, shrubs, and soil in this instance is merely a clean-up expense

with its commensurate $1,000 limit or debris removal with unlimited coverage.

1. "We begin with the proposition that an insurance policy, even when ambiguous, is to be construed by the court, and no jury question is presented unless an ambiguity remains after application of applicable rules of construction." *Alley v. Great American Ins. Co.*, 160 Ga. App. 597, 599 (287 SE2d 613) (1981).

In making an assessment we consider the pertinent legal principles, which the trial court also applied. Because insurance policies are contracts of adhesion, drawn by the legal draftsman of the insurer, they are to be construed as reasonably understood by an insured. *James v. Penn. Gen. Ins. Co.*, 167 Ga. App. 427, 431 (306 SE2d 422) (1983). "Exceptions, limitations and exclusions to insuring agreements require a narrow construction on the theory that the insurer, having affirmatively expressed coverage through broad promises, assumes a duty to define any limitations on that coverage in clear and explicit terms." *U. S. Fidelity &c. Co. v. Gillis*, 164 Ga. App. 278, 281 (296 SE2d 253) (1982). In brief, although the cardinal rule of construction is to ascertain the intention of the parties, if the language is susceptible to two different constructions the one most favorable to the insured will be adopted. *North British &c. Ins. Co. v. Mercer*, 211 Ga. 161 (84 SE2d 570) (1954).

Here the endorsement announces coverage of "your" (the insured's) trees and provides $250 payment for "any one of them." The reference to the $1,000 maximum for "all" trees, etc. is a limitation of all "your" trees, not every tree or the portion thereof which might constitute debris. The material removed from the Snitzers' property was undisputedly primarily from trees, shrubs and soil not originally a part of their property. Hence, the endorsement language would not apply, but the debris removal would.

St. Paul urges that the endorsement language was clearly intended to expressly limit the debris removal provision. However, the last policy they submitted belies that conclusion because it inserted the endorsement provision in the contract but still placed it separately and without reference to the debris removal portion.

2. The question of bad faith is for the jury unless it can be said that as a matter of law there was a reasonable defense which vindicates the insurer's good faith. *Colonial Life &c. Ins. Co. v. McClain*, 243 Ga. 263, 265 (253 SE2d 745) (1979). Considering the issues in the case, we cannot conclude that St. Paul's defense was reasonable as a matter of law. See *Stegall v. Guardian Life Ins. Co.*, 171 Ga. App. 576, 577 (2) (320 SE2d 575) (1984).

*Judgment affirmed. McMurray, P. J., and Sognier, J., concur.*

Decided June 22, 1987.

*James H. Fisher II*, for appellant.
*Richard P. Decker, F. Edwin Hallman, Jr.*, for appellees.