## A99A0876. GEORGIA FARM BUREAU MUTUAL INSURANCE COMPANY v. JACKSON.
### (522 SE2d 716)

ANDREWS, Presiding Judge.

Georgia Farm Bureau Mutual Insurance Company (Georgia Farm) appeals from the trial court's grant of Ellen Jackson's motion for summary judgment in her suit claiming an accidental death benefit under an automobile insurance policy.

1. In reviewing a grant of summary judgment, this Court conducts a de novo review of the record. Also, in considering the provisions of an insurance policy, the ordinary rules of contract construction govern, and this contractual interpretation is a question of law for the court. OCGA § 13-2-1; *Southern Gen. Ins. Co. v. Alford*, 234 Ga. App. 615, 616 (507 SE2d 179) (1998).

Ellen Jackson, Georgia Farm's named insured, had two vehicles, a 1988 Taurus and a 1992 Geo, insured under separate policies. Only the policy on the Geo had an accidental death benefit. This claim arose when Sandra Jackson, the 16-year-old daughter of Ellen Jackson, was killed in an auto collision while driving the 1988 Ford Taurus. Having made a claim under the Geo policy for the accidental death benefit, which was denied by Georgia Farm, Jackson initiated this litigation and was granted summary judgment.

The Geo policy was divided into the following sections: Part A, liability coverage; Part B, medical payments coverage; Part C, uninsured motorists coverage; Part D, damages to automobile; Part F, insured's duties after accident; and Part G, general provisions. There was no Part E.

The accidental death benefit was contained as a separate endorsement, FB 01 01, following the other Parts and provided, in pertinent part, as follows:

> The Company will pay insured's injury coverage benefits for: . . . (b) "accidental death benefit" incurred with respect to "bodily injury" sustained by an "eligible injured person" caused by an accident. . . . When used in reference to this coverage "accidental death benefit" means death resulting directly and independently of all other causes from "bodily injury" caused by accident while "occupying" or *being struck by a "motor vehicle."*

(Emphasis supplied.)

"Eligible injured person" is defined as any "insured" (which includes dependent children living at home, as Sandra was) "who sustains 'bodily injury' while occupying, or as a result of *being struck by: (a) the insured motor vehicle [the Geo under this policy]; or (b) a*

*non-owned motor vehicle."* (Emphasis supplied.)

Part B of the Geo policy, medical payments coverage, provided for payment of medical and funeral services for an insured caused by an accident. This section defined "insured" as, "a. You or any 'family member': (1) while 'occupying'; or (2) *as a pedestrian* when struck by; a motor vehicle designed for use mainly on public roads . . . b. Any other person while 'occupying' 'your covered auto.' " (Emphasis supplied.)

Sandra Jackson was driving north in the Taurus and had proceeded into an intersection when she was struck in the driver's door by Skelton's car which was proceeding east. Skelton's car was not insured by Georgia Farm, and it is Jackson's contention that the accident was compensable because Sandra Jackson, an "eligible injured person" under the Geo policy, sustained injury by being struck by Skelton's car, one "non-owned" by the insured.

Georgia Farm contends that the accidental death benefit of the Geo policy would have applied only if Sandra had been occupying the Geo or had been struck by the Geo or a non-owned vehicle *while a pedestrian.*

"Policies of insurance, being prepared and written by the insurer, are to be construed strictly in favor of the insured and against the insurer. [Cit.]" *Sovereign Camp Woodmen of the World v. Heflin*, 188 Ga. 234, 235 (2) (3 SE2d 559) (1939). *First Financial Ins. Co. v. American Sandblasting Co.*, 223 Ga. App. 232 (1) (477 SE2d 390) (1996) (physical precedent). Also, in construing the policy, we examine the language used within the four corners of the entire contract. *Southeastern Fidelity Ins. Co. v. Fluellen*, 128 Ga. App. 877, 879 (198 SE2d 407) (1973).

We agree with Jackson's contention that this factual situation is similar to that in *Ramsden v. Govt. Employees Ins. Co.*, 123 Ga. App. 163 (179 SE2d 671) (1971). There, Diane Ramsden, daughter of Walter and Elizabeth, sought recovery under an automobile policy issued to her and one issued to her father as a result of an accident while her father was driving her car. Both her mother and father were killed. The question addressed in the decision dealt only with the policy issued to the father which listed as the covered auto his own car, not that of his daughter. The father's policy provided that recovery of medical and funeral expenses to the insured (the father) would be made if he suffered bodily injury "through being struck by an automobile."

The insurer argued, as does Georgia Farm here, that such a provision applied only if the insured were a pedestrian. There, as here, this Court concluded that being struck by an automobile while occupying another automobile was sufficient to invoke this coverage. See also *Travelers Indem. Co. v. Watson*, 111 Ga. App. 98, 104 (140 SE2d

505) (1965). Such a result also comports with the test that it is not what the insurer intended by the words which it used, but what a "reasonable person in the shoes of the insured would understand them to mean" that controls. *Ga. Farm &c. Ins. Co. v. Washington*, 145 Ga. App. 216, 217 (243 SE2d 639) (1978).

Although not binding on this Court, we find persuasive the rationales of *Provau v. State Farm &c. Ins. Co.*, 772 F2d 817, 820-821 (3) (11th Cir. 1985) and *Bates v. United Security Ins. Co.*, 163 NW2d 390 (Iowa 1968), both of which involved interpretation of "struck by an automobile" in insurance policies in non-pedestrian situations and concluded that these instances were covered.

We are also persuaded to this conclusion by the fact that, in the medical payments coverage section, Georgia Farm clearly and unequivocally inserted language restricting coverage to the "insured" while occupying an automobile, either covered or non-covered by the policy, or as a pedestrian when hit by any automobile. That provision also covered any person while occupying the covered automobile. Had Georgia Farm meant for the accidental death coverage to include only a situation where an "eligible injured person" was struck by a non-owned automobile while a pedestrian, and to exclude a situation where the "eligible injured person" was occupying an automobile not covered by the policy at issue when struck by a non-owned automobile, it should have so specified. See *Ga. Farm &c. Ins. Co. v. Coleman*, 121 Ga. App. 510, 511 (174 SE2d 351) (1970).

*Pa. Nat. &c. Ins. Co. v. Burnetti*, 259 Ga. 794 (387 SE2d 570) (1990), relied upon by Georgia Farm for its contention that "struck by" does not include the present situation because the person was not a pedestrian is distinguishable because it involved statutory interpretation of Georgia's former no-fault law, not the wording of an insurance policy drafted by the insurer, and there was a countervailing public policy consideration not present here. Also, factually the situation was distinguishable. There, the non-insured person was injured when, in an effort to get out of the way of the insured automobile, he jumped out of the way and struck a wall. As the Supreme Court found, "[i]n this case, it was *Burnetti* who was the 'striking' object, albeit, as he claims, as a matter of dire and imminent necessity." Id. at 795 (2), fn. 1.

Nor do we conclude, as argued by Georgia Farm, that the Supreme Court meant to implicitly overrule *Ramsden* in *Pa. Nat. &c. Ins. Co.*, supra. This conclusion is supported by *Atlanta Cas. Co. v. Tucker*, 204 Ga. App. 584 (420 SE2d 344) (1992), decided two years after *Pa. Nat. &c. Ins. Co.*, supra, in which, under the no-fault statute, this Court concluded that Williams, insured by Atlanta Casualty, was liable for no-fault benefits to pedestrians Tucker and Watson when her car hit Taylor's car which then struck the pedestrians

even though Williams' car did not come in direct contact with them. It was concluded that both the propelling car and the propelled car "struck" the pedestrians for purposes of the no-fault statute.

The grant of summary judgment on the issue of coverage was correct.

2. Georgia Farm, in its second enumeration, also appeals from the trial court's imposition of a penalty pursuant to OCGA § 33-4-6. That section provides for imposition of a 25 percent penalty if a loss covered by a policy is not paid within 60 days of demand and a "finding has been made that such refusal was in bad faith."[1]

Here, there was no dispute of fact regarding Georgia Farm's refusal to pay. A demand was made by Jackson under the Geo policy on March 18, 1996. By letter of April 1, 1996, Georgia Farm responded that payment would not be made because "the vehicle Sandra was driving did not afford accidental death benefits."

By letter of April 17, 1996, Georgia Farm advised Ms. Jackson in response to her letter of April 8, that she could "collect only benefits stated in the declaration of your policy for the auto you [sic] were occupying at the time of the accident."

Following another demand of January 13, 1997, Georgia Farm, through its litigation manager, advised that there were no accidental death benefits on the Taurus and that "Accidental Death Benefits coverage is not transferable from car to car." Further, the letter advised that the intent of this coverage "was not [to] have it stackable or transferable."

Finally, after Georgia Farm's counsel entered the case, by letter from him on May 16, 1997, Jackson's counsel was advised that "[s]ince Sandra Jackson was not occupying *the* insured motor vehicle [the Geo] and *since the policy clearly implies that being struck by a non-owned vehicle is with reference to pedestrians*, there is no coverage. . . ." (Emphasis in original and supplied.)

Georgia Farm is correct that, where there is a "doubtful question of law, the insurer is not liable for bad faith penalties." *Fed. Ins. Co. v. Nat. Distrib. Co.*, 203 Ga. App. 763, 769 (4) (417 SE2d 671) (1992). Pretermitting the issue of whether there even was a doubtful question of law considering our conclusion regarding the impact of *Pa. Nat. &c. Ins. Co.*, supra, on this question, the position as to which Georgia Farm claimed the "doubtful question" was not even taken by the company until 14 months after the initial claim was made and

---

[1] After the trial court concluded that Jackson was entitled to partial summary judgment on her claim under the accidental death benefit portion of the policy, Georgia Farm requested that the trial court enter a total summary judgment so the entire case could be appealed. Counsel for all parties then stipulated the amount that would be due if the court found bad faith, which the court did.

then was based on an "implication" gathered from the policy, not on specific language or doubtful facts. See *Cincinnati Ins. Co. v. Kastner*, 233 Ga. App. 594, 596 (1) (504 SE2d 496) (1998); *Fireman's Fund Ins. Co. v. Dean*, 212 Ga. App. 262, 266 (2) (441 SE2d 436) (1994); *Fed. Ins. Co.*, supra at 769.

There was no error in the award of the bad faith penalty.

*Judgment affirmed. McMurray, P. J., and Ruffin, J., concur.*

DECIDED SEPTEMBER 22, 1999.

*Groover & Childs, Denmark Groover, Jr.*, for appellant.
*Sullivan & Kight, Malcolm K. Sullivan*, for appellee.